UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

_____

DIANA POLO TORRES,

           Petitioner,

      v.

MARKWAYNE MULLIN, et al.,

           Respondents.

Case No. 5:26-cv-02584-ACCV

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, Diana Polo Torres, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on May 14, 2026.  (Dkt. 1.)  For the reasons stated below, the Petition is granted.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner is a citizen of Colombia who is currently detained in the Adelanto ICE Processing Center, within the Central District of California.  (Dkt. 1 at 1.)  Petitioner entered the United States without inspection on June 7, 2022.  (Dkt. 1-2 at 2 of 21.)  On June 7, 2022, Customs and Border Protection ("CBP") encountered and detained Petitioner near Dulzura, California.  (*Id*.)  The next day, CBP released Petitioner on parole subject to her enrollment and participation in the Alternatives to Detention ("ATD") program.  (Dkts. 1-1 at 2, 1-2 at 3, 6 of 21.)

Petitioner claims, and Respondents do not dispute, that Petitioner complied with all of her check-ins with Immigration and Customs Enforcement ("ICE").  (Dkt. 1-1 at 2; *see generally* Dkt. 8.)  Given her full compliance, ICE removed her ankle bracelet. (Dkt. 1-1 at 2.)  While on parole, Petitioner studied English, addressed mental health issues stemming from the murders of her colleagues in Colombia, and joined Alcoholics Anonymous.  (Dkts. 1-1 at 3-4; 1-2 at 14-21 of 21.)

On March 13, 2026, Petitioner went to a check-in and ICE detained her.  (Dkt. 1-1 at 3.)  At that time, ICE served Petitioner with a Notice to Appear and placed her in detained removal proceedings pursuant to the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i).  (Dkt. 8 at 2.)  On April 13, 2026, Petitioner applied for Asylum and Withholding of Removal.  (Dkt. 1 at 4.)

On May 14, 2026, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 alleging her continued detention violates: (1) the Fifth Amendment to the United States (Substantive Due Process—Detention); (2) the Fifth Amendment to the United States Constitution (Procedural Due Process—Detention); (3) the Fourth Amendment to the United States Constitution (Unlawful Arrest); (4) the Administrative Procedure Act; and (5) the INA, 8 U.S.C. §§ 1225, 1226.  (Dkt. 1 at 21-28.)  Petitioner requests that the Court: (1) assume jurisdiction over this matter; (2) order Respondents to immediately release Petitioner from custody and return to her all of the documents Respondents confiscated; (3) declare Petitioner's re-arrest and re-detention violated the Due Process Clause of the Fifth Amendment, Fourth Amendment, Administrative Procedure Act, and INA; (4) enjoin Respondents from transporting Petitioner outside this District or deporting Petitioner pending these proceedings; (5) enjoin Respondents from re-arresting and re-detaining Petitioner in violation of her constitutional rights and the INA without an individualized pre-deprivation notice and a hearing before a neutral arbiter at which Respondents must provide clear and convincing evidence of material change of circumstances regarding Petitioner's flight risk or danger to others; (6) enjoin Respondents from placing any monitoring devices on Petitioner in violation of her

constitutional rights without individualized notice and hearing before a neutral arbiter at which Respondents must provide clear and convincing evidence of material change of circumstances regarding Petitioner's flight risk or danger; (7) set aside Respondents' unlawful practices and policies; (8) award Petitioner her costs and reasonable attorney's fees as provided for by the Equal Access to Justice Act and 28 U.S.C. § 2412; and (9) grant such further relief as the Court deems just and proper.  (Dkt. 1 at 28-30.)

Petitioner asserts, and Respondents do not dispute, that Petitioner has no criminal record, is not a national security risk, is not a flight risk, and is not a threat to the community.  (Dkt. 1 at 2; *see generally* Dkt. 8.)

On May 21, 2026, Respondents filed an Answer.  (Dkt. 8.)  Respondents argue: (1) Petitioner's detention is not unlawful because Petitioner is inadmissible under INA §§ 212(a)(6)(A)(i), 212(a)(7)(A)(i)(I); and (2) Petitioner's immediate release is not warranted because she has not exhausted her administrative remedy of seeking a bond hearing before the Immigrant Court pursuant to 8 U.S.C. § 1226(a).  (*Id*. at 3-4.)

On May 22, 2026, Petitioner filed a Reply arguing: (1) Petitioner's parole was unlawfully revoked; and (2) Respondents are responsible for Petitioner's unlawful detention.  (Dkt. 10 at 5-9.)

## II. JURISDICTION

As an initial matter, this Court has habeas jurisdiction over this case.  8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  "This provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting marks and citations omitted).  Petitioner challenges the constitutionality and sufficiency of the process by which she was arrested, had her parole revoked, and was re-detained.  (*See generally* Dkt. 1.)  As such, the Court has habeas jurisdiction under 28 U.S.C. § 2241 to consider these claims.  *See Hernandez*, 872 F.3d at 987.

3

### III. ANALYSIS

Petitioner brings numerous claims against Respondents. The Court begins with Petitioner's procedural due process claim, as success on that claim would offer her the most significant relief, release from custody. For the reasons below, the Court concludes that Petitioner's detention violates due process.

A writ of habeas corpus may be granted to any petitioner who demonstrates "[sh]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). A petitioner bears the burden of proving by the preponderance of the evidence that she is entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner argues, among other things, that the revocation of her parole violates her procedural due process rights under the Fifth Amendment. (Dkt. 1 at 22-24.) Respondents assert that Petitioner's detention is authorized under INA §§ 212(a)(6)(A)(i), 212(a)(7)(A)(i)(I) because Petitioner entered the United States without inspection and without valid entry documents, and Petitioner failed to exhaust her administrative remedies. (Dkt. 8 at 3-4.) Neither of these arguments are responsive to Petitioner's claim.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. Although "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the United States,] . . . once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the

4

United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 2500, 150 L. Ed. 2d 653 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439, 1449, 123 L. Ed. 2d 1 (1993).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (cleaned up). The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335; *see also Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 984, 108 L. Ed. 2d 100 (1990). "Applying this test, the [Supreme Court] usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127 (emphasis in original) (collecting cases).

The first *Mathews* factor is Petitioner's private interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 2601, 33 L. Ed. 2d 484 (1972) (finding prison parolees have a due process liberty interest)).

Because Petitioner was released into this country on parole subject to successful

participation in the ATD program, has lived in this country for over four years, and has built community ties, she has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Morrissey*, 408 U.S. at 481-82 ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions . . . [T]he liberty [of a parolee] is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Doe*, 787 F. Supp. 3d at 1093. Though Respondents argue that they have authorization to detain Petitioner under § 1226(a), "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Here, as noted, Petitioner was released from ICE custody by Respondents after her initial apprehension over four years ago, and lived a law-abiding life in the community before Respondents re-detained her in March 2026. Her release constituted an "implied promise" that her liberty would not be revoked unless she failed to live up to the conditions of her release. *See Morrissey*, 408 U.S. at 482.

Accordingly, Petitioner's private interest in retaining her liberty is significant.

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523, 123 S. Ct. 1708, 1717, 155 L. Ed. 2d 724 (2003). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

Petitioner was initially release from custody under the ATD program after arriving in the United States, which "at least implicitly," "reflects a determination by

the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk or is now subject to a final order of removal." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Respondents offer no evidence that Petitioner has now become a danger to the community or flight risk. (*See generally* Dkt. 8.).

Accordingly, based on the facts in the record, the Court finds the risk of erroneous deprivation is considerable here.

The final *Mathews* factor is the government's interest. Respondents fail to establish that the government has any interest in allowing Respondents to re-detain Petitioner without process. "[A]s many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz v. Lyons*, 25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, 803 F. Supp.

3d 1035, 1048 (E.D. Cal. 2025).

After considering all three *Mathews* factors, the Court concludes that Petitioner is entitled to release on procedural due process grounds.  Release is the appropriate remedy, not a bond hearing before an Immigration Judge as Respondents argue, because "a bond hearing will not redress the constitutional violation Petitioner has suffered in being re-detained without notice, reasoning, and a pre-detention hearing." *Bekhoev v. Marin*, 26-cv-00206-RAO, 2026 WL 1365631, at *6 (C.D. Cal. April 28, 2026) (collecting cases).

Having found Respondents violated Petitioner's procedural due process rights, the Court need not address Petitioner's remaining claims.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Petition and ORDERS Respondents:

1.   to release Petitioner, Diana Polo Torres (A-Number 240-335-391), immediately under the same conditions as she was released prior to her re-detention;

2.   to return all property to Petitioner that was confiscated from her when she was re-detained;

3.   to file a statement with the Court within three days of Petitioner's release attesting to Respondents' compliance with this Order; and

4.   are prohibited from re-detaining Petitioner under 8 U.S.C. § 1226(a) absent complying with Due Process requirements, including providing Petitioner with a pre-deprivation notice and hearing before a neutral decisionmaker.

///

///

///

///

8

The Court will issue Judgment consistent with this Order. Any fee petition must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court retains jurisdiction to adjudicate any collateral enforcement issues.

DATED:   06/23/2026

_____

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge